IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ULYSSES BRAXTON,<br># 35171-060,<br><br>          Petitioner,<br><br>vs.<br><br>ERIC WILLIAMS,<br><br>          Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 18-cv-948-SMY<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In August 1994, petitioner Ulysses Braxton was convicted by a jury in the Northern District of Ohio of three counts of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d); one count of conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371; and four counts of carrying or using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). He was sentenced to 135 months imprisonment on each of the armed bank robbery and conspiracy counts, to run concurrently, and a cumulative sentence of 65 years imprisonment on the § 924(c) counts, to run consecutively to the 135-month sentence. *United States v. Braxton*, Case No. 94-cr-0068 ("Criminal Case"). He is now a federal inmate incarcerated at FCI-Greenville and filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in the instant case. (Doc. 3). He argues he is entitled to habeas relief on the § 924(c) convictions under *Rosemond v. United States*, 572 U.S. 65 (2014).

**RELEVANT FACTS AND PROCEDURAL HISTORY**

Braxton was indicted along with co-conspirators David Clements, Jason Jarvis, Darin Austin, Mike Elma, and Gary Hobbs. All defendants except Elma proceeded to trial in July 1994.

1

At trial, the Government proceeded under two alternative theories regarding the § 924(c) counts: (1) that Braxton used a firearm during the robberies, or (2) that he aided and abetted the use of a firearm during the robberies. The jury instruction on aiding and abetting the § 924(c) counts did not require a finding that Braxton had advance knowledge that a firearm would be used. (Doc. 11-3, p. 36).

On Braxton's direct appeal, the Sixth Circuit Court of Appeals summarized the facts as follows:[1]

> To briefly recap, Clements [Petitioner Braxton] was a member of the gang that conducted the so-called "Point Break" robberies over a six month span in 1993. Clements was directly involved in some, but not all of these robberies. He was arrested, along with others, when a concerned citizen observed Alfie Cade (a co-conspirator) "casing" a bank. The citizen alerted the police of the suspicious activity after Cade approached a van occupied by Clements and other co-conspirators. When the police confronted the occupants of the van, they found Clements and the other occupants wearing black outfits and in possession of rubber surgical gloves. Both items had previously been used in the other bank robberies. In addition, the police found three loaded semi-automatic pistols.[2]

*United States v. Clements*, 181 F.3d 104 (Table), 1999 WL 238659, at *1 (6th Cir. 1999) (unpublished opinion). The court also noted its detailed factual description in its earlier opinion on the co-conspirators' direct appeal, which included facts relevant to Braxton's knowledge that firearms would be used in the robberies.

The first bank robbery occurred in July 1993. Earlier that day, co-conspirator Austin had given someone $500.00 to "rent" his station wagon, telling him to report the car stolen. Austin and Braxton (sitting in the station wagon) then asked a fifteen-year-old boy to get his brother, Andre Hall. When Hall appeared, Austin asked him, "Man, you got a pistol because we about to

---

[1] The Sixth Circuit referred to Braxton by his alias, Ulysses Braxton Clements.
[2] The Court explained that "Point Break" was a movie "that romanticized a life-style of robbing banks. Clements and his co-conspirators used the movie as a training film for the real-life bank robberies." *Id*. at *4, n. 1.

go Jack somebody?" The station wagon was recovered after the first robbery about a fourth of a mile from the bank, with clothes, ski masks, and gloves matching the description of clothes worn by the robbers. *United States v. Austin et al.*, 81 F.3d 161 (Table), 1996 WL 109500, at *1 (6th Cir. 1996) (unpublished opinion).

At trial, Anthony Robinson testified that he was the driver for the third robbery and participated in the fourth robbery and that he had attended an "instructional showing" of the movie "Point Break" with Braxton, Austin, and Jarvis earlier in the summer of 1993. At this showing, "Braxton and Austin asked Robinson if he would like to rob banks with them. Austin and Braxton, by imitating the movie, developed a *modus operandi* for bank robbery, in which they trained Robinson and Jarvis." *Austin*, 1996 WL 109500, at *2. The *modus operandi* entailed two or more of the co-conspirators, armed and wearing dark clothes and face coverings, entering the bank, telling everyone to lie on the floor, demanding money from the bank tellers, and threatening to shoot tellers who did not comply. *Austin*, 1996 WL 109500, at *1-2.

In his direct appeal, among other points, Braxton argued the evidence was insufficient to prove he used a firearm during the robberies. The Sixth Circuit rejected this argument and found that "there were surveillance photographs of the perpetrators holding firearms during the robberies, and extensive testimonial evidence from witnesses establishing Clements's [Petitioner Braxton's] involvement in the robberies." *Clements*, 1999 WL 238659, at *3. The court also noted in a footnote, "In addition, the government argues that even assuming the evidence was insufficient to directly establish that Clements used a firearm in the robberies, he would have been equally chargeable as a principal along with his co-defendants who used firearms in the robberies. . . . We find the government's point meritorious." *Id*., at *3, n. 3.

Braxton has filed a number of challenges to his conviction, including a motion under 28

3

U.S.C. § 2255. Relevant to this Court's determination, in December 2016, raising *Rosemond*, Braxton filed a motion for post-conviction relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). The district court deemed the filing to be a successive § 2255 motion and transferred it to the Sixth Circuit. (Criminal Case, Docs. 538, 558). The Sixth Circuit ultimately dismissed the matter for failure to prosecute. *In re Braxton*, Case No. 18-3069 (6th Cir. February 21, 2018).

In 2020, the Sixth Circuit granted Braxton leave to file a successive § 2255 motion in which he argues his fourth § 924(c) conviction is invalid because it was premised on the conspiracy to commit bank robbery count and conspiracy to commit bank robbery no longer qualifies as a crime of violence after *United States v. Davis*, 139 S. Ct. 2319 (2019) and asserts the Government concedes his *Davis* claim. *In re Braxton*, Case No. 19-3737 (6th Cir. January 10, 2020). Braxton seeks a full de novo resentencing under the First Step Act of 2018, which the government opposes. (Criminal Case, Docs. 570, 571, 581). The matter remains pending in the Northern District of Ohio, as does a motion for compassionate release pursuant to the First Step Act. (Criminal Case, Doc. 566).

## ANALYSIS

Braxton argues he is entitled to habeas relief on the § 924(c) convictions under *Rosemond v. United States*, 572 U.S. 65 (2014), because the jury was not instructed that the Government had to show he had advance knowledge that a firearm would be used in the robberies. Petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be employed to raise claims of legal error in conviction or sentencing; they may only challenge the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). Thus, aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction

and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. *See Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). Additionally, he may not file a "second or successive" § 2255 motion unless a panel of the appropriate court of appeals certifies that such motion implicates either newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

A prisoner may, however, challenge his federal conviction or sentence pursuant to § 2241 under very limited circumstances. Specifically, 28 U.S.C. § 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a § 2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See United States v. Prevatte*, 300 F.3d 792, 798-99 (7th Cir. 2002). "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998).[3]

Following *Davenport* and its progeny, the Seventh Circuit has enunciated a three-part test for determining whether § 2255 is inadequate or ineffective, thus triggering the savings clause:

> (1): the federal prisoner must seek relief based on a decision of statutory interpretation (as opposed to a decision of constitutional interpretation, which the inmate could raise in a second or successive § 2255 motion);
>
> (2): the statutory rule of law in question must apply retroactively to cases on collateral review *and* could not have been invoked in a first § 2255 motion; and
>
> (3): a failure to afford the prisoner collateral relief would amount to an error "grave enough" to constitute "a miscarriage of justice."

---

[3] The Seventh Circuit's interpretation of § 2255(e)'s savings clause aligns with that of the Sixth Circuit, where Petitioner was convicted. *See, e.g.*, *Wright v. Spaulding*, 939 F.3d 695, 699 (6th Cir. 2019) (collecting cases); *Martin v. Perez*, 319 F.3d 799 (6th Cir. 2003).

*Worman v. Entzel*, 953 F.3d 1004, 1008 (7th Cir. 2020) (emphasis in original) (citing *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016); *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019)). *See also Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019); *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). Thus, "there must be some kind of structural problem with section 2255 before section 2241 becomes available. In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

Under 18 U.S.C. § 2(a), a person who "aids, abets, counsels, commands, induces or procures" the commission of a federal offense is "punishable as a principal." "A person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond*, 572 U.S. at 71. In *Rosemond*, the Supreme Court answered the question "how those two requirements – affirmative act and intent – apply in a prosecution for aiding and abetting a § 924(c) offense." *Ibid*. The Court described § 924(c) as establishing a "combination crime," meaning that it "punishes the temporal and relational conjunction of two separate acts, on the ground that together they pose an extreme risk of harm." Therefore, "an aiding and abetting conviction requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime." In other words, the evidence must establish the defendant intended to bring about the "illegal scheme in its entirety – including its use of a firearm." *Rosemond*, 572 U.S. at 75-76.

Having previously found the intent requirement for aiding and abetting "satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense," the Court concluded, "[t]he same principle holds here: [a]n

6

active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun. In such a case, the accomplice has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope—that the plan calls not just for a drug sale, but for an armed one." *Rosemond*, 572 U.S. at 77-78. The Court went on to explain:

> For all that to be true, though, the § 924(c) defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an armed offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun. . . . For the reasons just given, we think that means knowledge at a time the accomplice can do something with it—most notably, opt to walk away.

*Rosemond*, 572 U.S. at 78.

> Of course, if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge. In any criminal case, after all, the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission."

*Rosemond*, 572 U.S. at 78, n.9.

Braxton evidently believes that pursuant to *Rosemond*, he need only show that the instruction given to his jury did not require a finding that he had advance knowledge a firearm would be used. (See Doc.15, p. 4). That is not correct. Pursuant to *Davenport*, he must also demonstrate a miscarriage of justice; he "must show that more likely than not any reasonable juror would have reasonable doubt that he was guilty of aiding and abetting [his co-conspirator's] use of the gun in the robbery." *Davis v. Cross*, 863 F.3d 962, 964 (7th Cir. 2017) (internal citation and quotation marks omitted).

7

Substantial evidence was presented during trial that Braxton had the required advance knowledge that a firearm would be used. As the Sixth Circuit has already determined, there was evidence sufficient to prove that he personally used a firearm during the robberies. *Clements*, 1999 WL 238659, at *3. There was also evidence that Braxton was one of the planners of the scheme to rob the banks using firearms. And, there is the simple fact the scheme involved a *series* of armed bank robberies. No reasonable juror could doubt that, at least after the first armed robbery, Braxton had actual knowledge that firearms would be used.

Moreover, the robberies were "takeover" robberies planned to occur during the business day in which the robbers had a "division of labor already mapped out" before entering the banks. It is "implausible" that such a robbery plan "would not have included a firearm designed to influence and threaten the employees or patrons that are sure to be there." *United States v. Lawson*, 810 F.3d 1032, 1041 (7th Cir. 2016). *See also Davis*, 863 F.3d at 965 ("[A] takeover robbery would be expected to involve arms.")

In sum, it is highly unlikely that a properly instructed juror would have reasonable doubt that Braxton had advance knowledge firearms would be used in the bank robberies. As such, he has not shown that the erroneous jury instruction caused a miscarriage of justice, and he is not entitled to habeas relief.

## Conclusion

For the foregoing reasons, Ulysses Braxton's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 3) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**. All pending motions are **DENIED AS MOOT**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

It is not necessary for Petitioner to obtain a certificate of appealability from this disposition

Case 3:18-cv-00948-SMY   Document 28   Filed 09/08/20   Page 9 of 9   Page ID #301

of his § 2241 Petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000). If Petitioner wishes to appeal, he may file a notice of appeal with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(B)(iii). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

A motion for leave to appeal *in forma pauperis* must identify the issues Petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS SO ORDERED.**

**DATED: September 8, 2020**

<div style="text-align:right">

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**U.S. District Judge**

</div>

9